# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1104

BRAD JENKINS,

*Plaintiff-Appellant,*

*v.*

CHRYSLER MOTORS CORPORATION
and DAIMLER CHRYSLER CORPORATION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99-65-TS-JM-2—**Theresa L. Springmann**, *Magistrate Judge.*

ARGUED OCTOBER 18, 2002—DECIDED DECEMBER 5, 2002

Before POSNER, DIANE P. WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* After a night on the town, with a blood alcohol level three times above the legal limit, Brad Jenkins passed out in his friend's 1995 Dodge Ram pickup, apparently soon after starting it. We don't know how long Jenkins, who was alone in the truck, was asleep, but the pickup eventually caught on fire. The fire was severe, as the interior of the cab was incinerated and Jenkins suffered burns to 20 percent of his body.

Jenkins filed a products liability suit against the manufacturer of the pickup, Chrysler Motors Corporation and

Daimler Chrysler Corporation, in the superior court of Lake County, Indiana. Chrysler (which is how we will refer to the defendants) removed the case to federal court. Jenkins alleged both that the product was defective and that Chrysler failed to warn consumers of a potential problem. Specifically, he contended that the fire was caused by defective transmission "quick connects," nylon or plastic fittings which connect tubing to the transmission as part of the cooling system. The theory was that the failure of the quick connects released transmission fluid into the engine compartment, which ignited, starting a fierce fire. A jury apparently rejected this theory and returned a verdict for Chrysler.

As the basis for his appeal, Jenkins cites two evidentiary rulings which he contends constitute an abuse of discretion. His is an uphill fight, for judges have broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*. We reverse these rulings only for an abuse of discretion, and we find an abuse of discretion only when no reasonable person could agree with the district court. *Gagon v. American Cablevision*, 77 F.3d 951 (7th Cir. 1996).

To put the evidentiary issues in context, we note that there was testimony at trial which contradicted Jenkins' theory that the quick connects failed. An expert testified that in a quick connect failure, the number 1 quick connect fails first, followed in numerical order by the other three. But in Jenkins' fire there was no failure of the number 1 quick connect. It was not leaking when the engine was examined after the fire, and there was no evidence of fire damage to that part of the engine. There were no burn patterns under the truck where the quick connects come into the transmission. Quick connect number 2 was also undamaged. Furthermore, the transmission was still full of fluid, whereas in a quick connect failure the fluid would drain out very rapidly.

The evidence also showed that Jenkins and the owner of the truck, Sean Wilson, intended to use it for snow plowing and had installed a hydraulic power plow to its front just a few weeks before the fire. There was evidence from which a jury could conclude that the plow was not properly installed. There was no fuse in the snow plow wiring system. After the fire, the wire showed signs of arcing, and a section was welded to the wheel well of the truck. A portion of the plow power cable was welded to the fender wall. If the control button to the plow is pressed for more than 30 seconds (Chrysler postulates that Jenkins could have hit the button in his sleep), the draw on the wire can exceed 230 amps, which exceeds the capacity of the wire. If that goes on long enough, the wire can glow red and the insulation could start on fire. A fire fueled by burning insulation could exceed 1,500 degrees. The melting point of copper, which would be necessary to weld copper to steel, is about 2,000 degrees. Chrysler's expert, Robert Banta, testified that the "cause of the fire in the Wilson vehicle was due to a short circuit of the snow plow power supply lead between the battery and the snow plow solenoid on the left fender innert." When asked if the failure of the quick connect was a contributing cause, he said "no." In short, the jury had evidence from which it could conclude that the quick connects had nothing to do with the fire.

Nevertheless, Jenkins contends that evidence should have been admitted which would have shown that Chrysler knew about quick connect failures in 1987, not in 1995 as their expert acknowledged. The argument is that the longer the time period during which Chrysler knew of the problem, the more likely that the jury would conclude that the company failed to exercise reasonable care to inform consumers of the danger. Jenkins argues that his exhibit 56, which was excluded, shows that Chrysler had notice of a problem with the quick connects in 1987 and

that the evidence should have been admitted to impeach Banta, who testified that Chrysler first became aware of Dodge Ram fires in 1995 and did not link the fires to quick connect failures until sometime in 1996. Banta acknowledged that there were 50 fires, but he said no one, other than Jenkins, was hurt and that when Chrysler realized the problem, it notified the federal government that it was recalling the trucks. Jenkins contends that exhibit 56 shows that Chrysler knew of the problem in 1987, which might convince the jury to conclude that Chrysler did not act reasonably in waiting to issue the recall.

This evidence was excluded because the failures referenced in exhibit 56 were on vehicles other than the Ram, specifically the Jeep Cherokee and Grand Cherokee. And the judge wanted to keep the issues narrowly focused on the Ram. Banta's testimony was carefully presented to go only to failures on the model which burned. So, Chrysler argues, there would be no impeachment even if it were shown that problems existed on other vehicles.

We understand why Jenkins wanted to use the evidence. It includes the following statement:

> Vehicles operating under extreme conditions, such as stuck in sand, plowing wet snow, or towing excessive loads in stop and go traffic, approach torque converter high torque stall. If operated in this manner for a sufficiently long period, transmission fluid temperatures are raised to the point that the nylon retainer [a quick connect] in the high pressure coolant line melts and allows fluid leakage.

Nevertheless, we cannot find that the exclusion of the evidence was an abuse of discretion. The document was specifically geared to vehicles other than the Ram. Banta was testifying about the Ram. More importantly, convincing evidence at trial showed that the quick connects had

nothing to do with this particular fire. Given this evidence, whether or not Chrysler knew about a problem with the quick connects would not have convinced a jury to return a different verdict.

There is also evidence that Jenkins wanted excluded that was admitted. The evidence was that he had a number of drunk driving convictions and a suspended license. He also had checked himself into a treatment facility. Before trial, in a motion *in limine*, he won a ruling that evidence of his past alcohol use and the results of that use would be excluded. But at trial the evidence was admitted to impeach Jenkins' father's testimony that before the fire Jenkins was a happy person with a "twinkle in his eye" and afterwards he was depressed. The alcohol evidence purportedly showed that he couldn't have been all that happy before, either.

The jury in this case knew that Jenkins was drunk on the night of the fire. His blood alcohol level was between .259 and .289. So evidence of alcohol use was already before the jury, and the door was opened to the admission of evidence of prior alcohol use and the effect it had on Jenkins' life by his father's testimony implying that the fire caused his problems. We cannot find an abuse of discretion. AFFIRMED.

A true Copy:

      Teste:

 

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*