In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1511

AFRAM BOUTROS,

*Plaintiff-Appellant,*

*v.*

AVIS RENT A CAR SYSTEM, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CV 08196 — **John J. Tharp, Jr.**, *Judge.*

ARGUED SEPTEMBER 22, 2014 — DECIDED SEPTEMBER 23, 2015

Before WOOD, *Chief Judge*, and EASTERBROOK and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Afram Boutros worked for Avis Rent A Car as a courtesy bus driver at the company's facility at O'Hare Airport. One night in May 2008, Boutros informed his supervisor that the fire extinguisher on his bus inexplicably discharged, spraying fire retardant near the driver's seat. He

reported no injury at the time, but the next morning he claimed that chemicals from the discharge had harmed him. Avis launched an investigation and eventually fired Boutros for dishonesty and insubordination in connection with his shifting accounts of the fire-extinguisher accident.

Boutros sued, claiming that Avis fired him because of his race and subjected him to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and also retaliated against him for exercising his rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 *et seq.* The case was tried to a jury, which found for Avis on all claims. After a perfunctory and unsuccessful motion for a new trial, Boutros appealed, raising claims of evidentiary error and challenging the denial of his posttrial motion.

Avis asks us to dismiss the appeal because Boutros's appellate submissions violate several rules of appellate procedure. That's true, but we prefer to decide the case on the merits. The appeal is frivolous, so we affirm the judgment and issue an order to show cause why sanctions should not be imposed under Rule 38 of the Federal Rules of Appellate Procedure.

## I. Background

Boutros began working at Avis's O'Hare Airport facility in 2002. He quit in 2005 to join the Army, but his tenure in the military was brief. In 2006 he was honorably discharged based on unsatisfactory performance. Boutros tried to return to Avis,

but the company was reluctant to rehire him. He filed suit under USERRA, which guarantees reemployment rights to persons "whose absence from a position of employment is necessitated by reason of service in the uniformed services." 38 U.S.C. § 4312(a)(1). Avis maintained that USERRA did not apply but eventually settled the suit by agreeing to rehire Boutros. On May 4, 2007, he returned to Avis as a courtesy bus driver at O'Hare Airport.

The job of a courtesy bus driver involves driving customers from the airport to Avis's rental-car lot and back again, and also assisting customers with their luggage. On the evening of May 27, 2008, Boutros was driving Courtesy Bus No. 35 from the rental-car lot to the airport when the on-board fire extinguisher fell off its bracket and sprayed fire-suppressant powder inside the bus. No passengers were aboard at the time.

Boutros drove the bus back to Avis's facility and informed his shift manager, Rolando Trujillo, of the accident. His initial story was that a customer knocked the extinguisher over and it sprayed fire suppressant next to the driver's seat. Trujillo saw a small amount of powder suppressant near the driver's seat and instructed Boutros to take the bus to Avis's mechanic shop for cleaning. If no mechanics were available, he told Boutros to take the bus out of service and use a different one for the remainder of his shift.

A bit later that same evening, Boutros encountered another shift manager, Mario Foster, and told him what happened. Like Trujillo, Foster instructed Boutros to have a mechanic clean the bus. Boutros said there were no mechanics available and that he had already cleaned the bus himself. He also told

Foster that the extinguisher fell on its own (not that a customer knocked it over) and that it sprayed on his pants and face (not next to the driver's seat). Finally, he claimed that the fire-suppressant powder caused him to cough and made it difficult to breathe. He also expressed concern about his exposure to chemicals. But he declined medical assistance.

The next day Boutros changed his mind and requested medical attention. Avis sent him to a health clinic. Boutros thereafter went to the emergency room. He later claimed that the clinic doctors sent him to the hospital because fire-extinguisher chemicals can cause cancer. Boutros remained off of work for three days and filed a workers' compensation claim regarding the incident.

This was not the first time Boutros had made an unusual medical claim. A few months before the fire-extinguisher accident, Boutros had complained about an odd "hugging incident" involving Trujillo. According to Trujillo's version of this event, Boutros was having a hard day, so he gave him a hug. Boutros, on the other hand, said it wasn't just a hug—it was a hug accompanied by a shove. But he also said he wasn't hurt. The next day, however, Boutros left work to seek medical attention, claiming that Trujillo had injured him. The day after that he complained of serious damage to his kidneys. Trujillo was disciplined for the incident under the company's zero-tolerance policy for unwelcome workplace touching. Boutros's claim of injury was unsubstantiated.

Based on Boutros's conflicting statements about the fire-extinguisher accident and his peculiar claim of injury from the "hugging incident," Avis decided to open an investigation. Bill

Rogers, Avis's Chicago-area manager, checked the "Bus Inspection Form" Boutros had completed to verify the condition of Bus No. 35 at the beginning of his shift on May 27. The form listed the fire extinguisher as "OK." His suspicions aroused, Rogers told Eva Liss, Avis's human-resources manager, that he thought Boutros's story about the fire-extinguisher accident was "fraudulent" and asked if Avis could "get rid" of Boutros "once and for all."

On June 8 Avis suspended Boutros for dishonesty and insubordination. He had given Trujillo one account of the fire-extinguisher accident but a different one to Foster, and the preliminary investigation didn't support either version. He also violated a direct order from his supervisor by cleaning the bus himself rather than delivering it to maintenance or taking it out of service and using another bus.

While Boutros was serving his suspension, Rogers and Liss continued their investigation, taking written statements from Boutros, his managers, and other potential witnesses, and interviewing the doctors who treated Boutros. Boutros had claimed that no mechanics were available on the evening of May 27, but that wasn't true; records showed that several mechanics were on duty and available. Doctors at the clinic denied ever telling him to go to the emergency room due to cancer concerns. The bracket holding the extinguisher in place on Bus No. 35 showed no signs of rust or disrepair.

They also interviewed Dane McCartney, a representative of Avis's fire-extinguisher vendor, asking him how the extinguisher might have accidentally discharged. McCartney wrote a short report for Avis comparing the weight of the extin-

guisher after the incident to the weight listed on its label. He concluded that it discharged only about 5.5 ounces of powder. That was inconsistent with Boutros's claim that the extinguisher sprayed "a lot."

At some point during the investigation, Boutros changed his story again, claiming that Trujillo had authorized him to clean the bus himself and that his coworker, Ricky Sappington, had seen him vomiting in the parking lot on the night of the incident. Sappington denied this and gave Avis a handwritten statement to that effect. At the conclusion of the investigation, Avis fired Boutros for dishonesty and insubordination.

Boutros then filed suit against Avis alleging that he was fired because of his race in violation of Title VII. He also alleged that Avis had subjected him to a hostile work environment in violation of Title VII and retaliated against him for his earlier USERRA suit. Although the Title VII claims specifically alleged discrimination on the basis of race, it became clear later in the litigation that Boutros actually was claiming that Avis discriminated against him because of his perceived national origin (or perhaps ethnicity) and religion. Boutros is a native of Lebanon, a Christian, and an ethnic Assyrian; he claimed that his supervisors and coworkers perceived him to be Arab and Muslim.

The case proceeded to jury trial. Avis moved in limine to exclude certain evidence related to the prior USERRA lawsuit. The district judge withheld ruling, instead encouraging the parties to stipulate to the relevant facts about the prior litigation. They did so and entered the following stipulation, which was read to the jury during trial:

> [Boutros] worked for Avis from 2002 into 2005[,] when he left to serve in the United States Army. In 2006, after [Boutros's] discharge from the military, he sought to return to work at Avis. The parties disputed whether he was entitled to return to work at Avis. [Boutros] filed a lawsuit against Avis regarding his reemployment rights under USERRA. The parties resolved that lawsuit. In May of 2007, [Boutros] returned to work at Avis.

Boutros moved in limine to exclude Sappington's out-of-court statement and also to preclude Avis from using McCartney as an expert witness. The judge denied the first motion, reasoning that Sappington's statement wasn't hearsay because Avis was not presenting it for its truth but only for its effect on Avis's managers as they considered whether to fire Boutros. The judge denied the second motion too, after Avis's lawyer said she wasn't planning to call McCartney as an expert witness.

At trial Rogers testified about the course of the investigation and Avis's decision to fire Boutros for dishonesty and insubordination. Avis introduced Sappington's and McCartney's out-of-court statements through Rogers for the nonhearsay purpose of showing their effect on Avis's decision to fire Boutros. Avis also called Juanita Chaidez, another Avis manager, who testified about (among other things) Sappington's and McCartney's out-of-court statements.

Boutros objected to the introduction of Sappington's and McCartney's statements on hearsay grounds. The judge

overruled each objection, allowed the testimony, and at Boutros's request gave the jury a limiting instruction explaining that the statements were not offered for the truth of the facts asserted but rather to prove their effect on Avis. Regarding McCartney's out-of-court statement, the judge also instructed the jury that the statement was neither offered nor admitted as the opinion of an expert witness.

The jury found for Avis on all claims. Boutros thereafter hired a new lawyer, who filed a boilerplate, multipurpose posttrial motion requesting the alternative remedies of judgment as a matter of law, *see* FED. R. CIV. P. 50; a new trial, *see id.* Rule 59; or relief from judgment, *see id.* Rule 60. The motion contained no meaningful content but merely quoted the rules and requested an opportunity to file a supplement at an unspecified later time. The judge denied the motion in its entirety, saying that it "barely qualifies as a motion" and "was plainly a placeholder" in a futile quest for an extension of time to file a proper motion for a new trial. The judge noted that Rule 59(b) sets a 28-day deadline for motions for a new trial, and Rule 6(b) prohibits the court from extending that deadline.

Boutros timely appealed.

## II. Discussion

Boutros raises three issues on appeal. He challenges the admission of Sappington's and McCartney's out-of-court statements. He also argues that the judge "erred in limiting [the] testimony of the previous [USERRA] lawsuit." Finally, he challenges the denial of his Rule 59 motion for a new trial.

Before turning to the merits of these claims (or, as we shall see, their abject lack of merit), we note some serious procedural irregularities in Boutros's appellate submissions. Although Boutros is represented by counsel, his opening brief violates several appellate and circuit rules. The statement of facts lacks *any* citation to the record, in violation of Rule 28(a)(7) of the Federal Rules of Appellate Procedure and Circuit Rule 28(c). The appendix lacks a copy of the judgment, complete transcripts of the evidentiary rulings challenged on appeal, and a transcript of the posttrial hearing at which his Rule 59 motion was denied. This violates Rule 10(b)(2) and Rule 30(a) of the Federal Rules of Appellate Procedure, and also Circuit Rules 30(a) and (b).

Avis noted these deficiencies in its response brief and supplied a copy of the judgment and relevant transcripts in its own appendix. Based on the rules violations, however, Avis urges us to dismiss the appeal. *See Morisch v. United States*, 653 F.3d 522, 529 (7th Cir. 2011) ("A violation of Rule 10(b)(2) is grounds for forfeiture and dismissal."); *Cole v. C.I.R.*, 637 F.3d 767, 773 (7th Cir. 2011) ("Complete failure to comply with Rule 28 will result in dismissal of the appeal.") (internal quotation marks omitted). Alternatively, Avis asks that we decide the appeal based solely on its recitation of the facts and the transcripts it has submitted. *See Albrecthsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (adopting this approach for a Rule 28 violation).

In reply Boutros insists that he has complied with "the essence of the[] rules." He has not. The rules violations are multiple and conspicuous, clearly providing grounds for

dismissal. Still, we prefer to decide the case on the merits. We will, however, disregard Boutros's statement of facts and decide the appeal based solely on Avis's account and the relevant transcripts.

Boutros raises two claims of evidentiary error. First, he argues that admitting Sappington's and McCartney's out-of-court statements for nonhearsay purposes was unduly prejudicial under Rule 403 of the Federal Rules of Evidence. Second, he claims that the judge improperly limited the evidence of his prior USERRA suit. We review evidentiary rulings for abuse of discretion. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

The Rule 403 argument is frivolous. Boutros did not object to this evidence on Rule 403 grounds, so the claim is unpreserved. *See* FED. R. EVID. 103(a); *see also Williams v. Dieball*, 724 F.3d 957, 961–63 (7th Cir. 2013). Although Rule 103 permits plain-error review of forfeited claims of evidentiary error, in civil cases this review is available only in "extraordinary circumstances." *Williams*, 724 F.3d at 963. This requires Boutros to show that "(1) exceptional circumstances exist; (2) substantial rights are affected; and (3) a miscarriage of justice will result" if review is denied. *Id.* (quoting *Estate of Moreland v. Dieter*, 395 F.3d 747, 756 (7th Cir. 2005)). Boutros has neither acknowledged nor made any effort to shoulder this burden.

His argument is doomed in any event. Rule 403 permits the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403; *Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013); *Javier v. City of Milwaukee*, 670 F.3d 823, 832 n.8 (7th

Cir. 2012). Sappington's and McCartney's out-of-court state-
ments were presented not for their truth but as evidence of
Avis's reasons for suspending and then firing Boutros after the
fire-extinguisher accident. Boutros sued Avis for firing him
with improper *intent*, so the evidence was clearly probative on
that issue.

Boutros's argument for undue prejudice is essentially that
these statements made him look dishonest in front of the jury.
But the key question in the case was not whether Boutros was,
in fact, dishonest; it was whether Avis's nondiscriminatory
reason for firing him was pretextual—that is, just a cover for
discrimination. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464
(7th Cir. 2014) (explaining that the "only question" in an
employment-discrimination case "is whether the employer's
proffered reason was pretextual, meaning that it was a lie")
(internal quotation marks omitted). McCartney's statement
about the fire extinguisher was not offered to prove how the
extinguisher did, in fact, fall and discharge.[1] Rather, it was one
of many data points on which Avis relied when it decided to
fire Boutros for dishonesty and insubordination.

Sappington's statement was similar. It contradicted what
Boutros had claimed during the investigation—namely, that
Sappington saw him vomiting in the parking lot on the night
of the incident—but it was not admitted to prove that Boutros

---

[1] Boutros also argues that admitting McCartney's statement was unduly
prejudicial because the jury might have believed that he was an expert
witness. This is preposterous. McCartney did not testify, and the judge
specifically instructed the jury that his out-of-court statement was *not*
admitted as the opinion of an expert witness.

had, in fact, lied, or even that he lacked credibility as a witness in the case. Rather, it was admitted as evidence that Avis fired him for nondiscriminatory reasons—specifically, dishonesty and insubordination. It was the jury's job to decide whether Avis's proffered reasons actually motivated its decision to terminate Boutros's employment. Whether those reasons were "unwise or unfair" is irrelevant. *Id.*

Finally, any undue prejudice was effectively mitigated by the judge's limiting instructions. *See United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998) ("So long as the judge is convinced that the potential prejudicial effect of the jury considering testimony for a hearsay purpose does not substantially outweigh the probativity of the testimony's intended non-hearsay use, it is within his broad discretion to admit the evidence into the record, provided that a limiting instruction is given upon request.") (citation omitted). Boutros insists that the limiting instructions were insufficient to cure the prejudice. This argument too is a loser. "[T]he law assumes that [juries] can and do follow the limiting instructions … ." *Id.* at 426. Boutros has not explained why the normal presumption should not apply here.

Boutros next argues that the judge improperly prevented him from presenting evidence regarding his prior USERRA lawsuit against Avis. He invokes Rule 106, which codifies the "rule of completeness": "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction … of any other part … that in fairness ought to be considered at the same time." FED. R. EVID. 106.

There are two glaring problems with this argument. First, the *judge* didn't limit this evidence. *Boutros stipulated* to the facts of the prior USERRA suit. Second, Rule 106 doesn't apply.

In response to Avis's motion in limine, the judge encouraged the parties to stipulate to the facts of the earlier lawsuit. Boutros voluntarily did so, and his stipulation below waives the issue on appeal. *Cent. States, Se. & Sw. Areas Pension Fund v. Koder*, 969 F.2d 451, 455 (7th Cir. 1992); *see also Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989) ("Stipulations regarding the nature of trial proceedings are crucial to the prompt and efficient disposition of litigation. Therefore, once made, a stipulation is binding unless relief from the stipulation is necessary to prevent a 'manifest injustice' or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law.").

Boutros claims that he was acting "with tied hands" after the judge made "a dispositive ruling on the issue after motions were filed." This is flatly incorrect. The judge did not rule on Avis's motion in limine but simply invited the parties to try to reach a stipulation about the relevant facts regarding the prior suit. This was a reasonable trial-management suggestion, and Boutros readily agreed and arrived at an acceptable stipulation with Avis.

In any event, Rule 106 is a *defensive* evidentiary tool. When a party introduces part of a writing or recorded statement into evidence, the *opponent* may ask the court's permission to place before the jury other parts of the writing or statement that "in fairness ought to be considered at the same time." As we've explained, "a party *against whom* a 'fragmentary statement' is

introduced may ask the district court to admit other parts of the statement necessary to 'clarify or explain the portion already received.'" *United States v. Price*, 516 F.3d 597, 604 (7th Cir. 2008) (emphasis added) (quoting *United States v. Glover*, 101 F.3d 1183, 1189 (7th Cir. 1996)). Boutros's reliance on Rule 106 is entirely inapt. He hasn't identified a "fragmentary" writing or recorded statement that was introduced against him and needed clarification or explanation. This argument too is frivolous.

Lastly, Boutros challenges the denial of his Rule 59 motion for a new trial. It should be obvious why this argument cannot succeed. As we've noted, Boutros's posttrial motion was devoid of meaningful content. Indeed, the judge said it "barely qualifies as a motion" and was nothing more than a "place-holder" in a brazen effort to obtain an extension of the Rule 59(b) deadline, which Rule 6(b)(2) says cannot be extended. Nothing more needs to be said on this issue.

For all the foregoing reasons, this appeal is frivolous. Accordingly, we invoke Rule 38 and issue an order to show cause why sanctions should not be imposed for filing a frivolous appeal. *See* FED. R. APP. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after … notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."). Boutros's attorneys shall respond within 14 days of the date of this opinion.

AFFIRMED; ORDER TO SHOW CAUSE ISSUED.