In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3226

NATHANIEL JACKSON,

*Plaintiff-Appellant,*

*v.*

LIEUTENANT DAVID WILLIS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:12-cv-03023-CSB-DGB — **Colin S. Bruce**, *Judge.*

ARGUED NOVEMBER 8, 2016 — DECIDED DECEMBER 27, 2016

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Nathaniel Jackson, an inmate in the custody of the Illinois Department of Corrections, filed a complaint pursuant to 42 U.S.C. § 1983 alleging that his rights under the Eighth Amendment were violated by prison officials. He brought the lawsuit against David Willis, a Lieutenant at

Logan Correctional Center, and Eddie J. Payne, a correctional officer at Pinckneyville Correctional Center, in connection with an incident that occurred at Logan on August 4, 2011, during his transfer from Dixon Correctional Center to Pinckneyville. Jackson alleged that he was unconstitutionally subjected to excessive force and also alleged a failure to protect by the refusal of his request to be placed in a prison in which he had no known enemies. The details surrounding the Eighth Amendment claim are of limited relevance to the issues in this appeal. In brief, Jackson was scheduled to be transferred from Logan to Pinckneyville, but when he arrived at Logan he refused to transfer to Pinckneyville stating that he had made enemies with correctional officers there. He asserted that he had a right to refuse a transfer. In support of that contention, he testified that he had witnessed other prisoners refuse transfers from Logan, and they were placed in segregation and issued a disciplinary ticket. He further asserted that in May 2007, he refused a transfer to Shawnee Correctional Center while he was at Logan because prison employees were his enemies there, and he was allowed to stay at Logan. In the August 4, 2011, incident, Jackson's refusal to transfer met with a different reaction. He testified that a number of officers lifted him over their heads and threw him, head first, into the van, causing injury. The officers disputed his testimony as to the manner in which he was transported. They testified that he refused to walk to the van, and that they carried him there, but that he stepped inside of his own accord and was not thrown into it. They further asserted that once inside the van he never claimed any injury, nor did he request any medical treatment.

Following a trial, a jury returned a verdict in favor of the defendants and against Jackson. On appeal, counsel for Jackson argues that he is entitled to a new trial because the court refused to grant a continuance when his attorney withdrew on the eve of trial, the court improperly admitted a 7-year-old disciplinary report without a limiting instruction or explanation, and the court abused its discretion in admitting a 12-year-old burglary conviction as evidence of Jackson's truthfulness. None of those alleged errors rendered the trial unfair and command a new trial.

As he proceeded with his case in the district court, Jackson filed multiple requests seeking the appointment of *pro se* counsel. The district court denied the appointment of counsel numerous times, including in January and October of 2013, and in June of 2014. Each time, the district court reasoned that Jackson had experience litigating and that his pleadings demonstrated a grasp of the relevant facts and law. The court also noted that Jackson had personal knowledge of the alleged excessive force and should be able to obtain medical records to corroborate his injuries. The court concluded, in each instance, that Jackson was competent to proceed *pro se* in light of the relative simplicity of his claims. See *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (setting forth the considerations in determining whether to appoint counsel in civil litigation). On August 26, 2014, the district court procured *pro bono* representation for Jackson. At that time, the court also extended the final pretrial conference date to September 26. The jury trial dates of October 7–9 had been set by the court on May 9, and at the status on August 26 the court made clear that the final pretrial conference and jury trial dates were firm. Jackson's

appointed counsel, Bhairav Radia, appeared in person for the September 26 pretrial conference, and Jackson appeared by phone. At that conference, Jackson did not express any concerns with Radia's representation. Ten days later, on the eve of trial in a case that had been pending for 32 months, Jackson—appearing by phone—asked the court to dismiss Radia and to grant him a continuance of the trial date. In addition, at Jackson's request, his attorney filed a motion to withdraw in the case. After a discussion with the trial court at which the court reiterated that the trial date was "firm" and that Jackson would be disadvantaged if proceeding unrepresented, Jackson indicated a willingness to proceed with Radia, but Radia stated that he wanted to proceed with his motion to withdraw because his client disagreed with his trial strategy and fundamentally distrusted him personally. The trial court arranged for Jackson and Radia to have the use of the phone in the courtroom without interruption for around 20 minutes in order for them to discuss how they wanted to proceed. When court reconvened, Radia informed the court that Jackson had confirmed that he fundamentally distrusted Radia and that they were in agreement that they could not work together as attorney and client. The trial judge did not inquire of Jackson separately whether he agreed with that characterization—which would have been preferable—but Jackson has never asserted that Radia incorrectly characterized his position in informing the court that they agreed that they could not work together. At that time, the trial judge granted the motion to withdraw, but in order to mitigate the adverse impact on Jackson, the court first required Radia to remain as standby counsel. The trial judge refused to continue the case, reasoning

that: it was a relatively straightforward case; Jackson knew the facts as well as anyone; it was late afternoon the day before trial; it would be difficult to contact all of the prospective jurors given that many worked in the fields on farms in the rural area; and that many prospective jurors had arranged for time off work already. The court also stated that it had contacted many attorneys before finding one available to represent Jackson the first time, and had no reasonable ability to obtain additional counsel for him.

The court inquired as to whether Jackson had seen all of the documents in the case, and Radia indicated that Jackson had not seen a set of documents that were prepared as trial exhibits. The court then altered the schedule for the next day in order to give time for Jackson to review them with standby counsel. Instead of proceeding with the trial the next day, the court limited the proceedings to jury selection in the morning, and made arrangements for Jackson to stay at the courthouse all day that day to allow him to review the exhibits in the Marshal Service area with Radia, or to take the documents back to the correctional center.

Jackson recognizes that he had no right to counsel in his civil proceeding, and does not argue that the court erred in failing to obtain substitute counsel for him after Radia was allowed to withdraw. His only claim is that the trial court should have granted a continuance to allow him to either obtain substitute counsel on his own or prepare to defend himself *pro se.*

A district court's decision to deny a continuance is reviewed only for abuse of discretion, and we will reverse only

if the record contains no evidence upon which the judge could have rationally based his decision. *Wasson v. Peabody Coal Co.,* 542 F.3d 1172, 1175 (7th Cir. 2008). "This court has emphasized that 'district judges must be allowed considerable leeway in scheduling civil cases, and therefore in denying continuances that would disrupt their schedules … .'" *Id.* at 1175, quoting *Research Sys. Corp. v. IPSOS Publicite,* 276 F.3d 914, 920 (7th Cir. 2002). Jackson argues that the court abused its discretion in refusing the continuance because: this was his first and only continuance in the 32-month-old case; the request was made in good faith; he had not received all discovery in a timely fashion; and having persuaded Jackson that he needed experienced trial counsel, the court should not have permitted appointed counsel to withdraw without granting a continuance sufficient to allow Jackson to obtain substitute counsel or prepare to try the case *pro se.* None of those arguments establish an abuse of discretion here.

Jackson's argument that it was his first request for a continuance and that discovery was not timely received suffer from the same defect, in that the continuance request was made on the eve of trial. Jackson appeared by phone ten days prior, and neither requested a continuance nor did he even complain of his representation or the discovery concerns at that time. The compressed time period in which to prepare to try his case was a result of his failure to raise those concerns earlier. Moreover, Jackson's complaint that the court convinced him of the need for counsel but then failed to grant him time to prepare his case ignores the sequence of events on October 6, the day before trial. Jackson initially agreed to retain his counsel when questioned by the court and after the court made

clear to him that no continuance to the trial would be granted; nevertheless, after he was given time to consult privately with his counsel, Radia informed the court that Jackson had confirmed that he fundamentally distrusted Radia and that they were in agreement that they could not work together as attorney and client. Therefore, even with the knowledge that the court would not continue the case, Jackson agreed that he still wanted his counsel to withdraw.

The trial court attempted to minimize the adverse impact of Jackson's decision by requiring Radia to remain as standby counsel. The court also altered the trial schedule for the next day, so that jury instruction would end in the morning and ensuring that Jackson had access to Radia and all trial exhibits for the remainder of the day. Those provisions appeared to have ameliorated the adverse impact of the denial, because the court noted in a subsequent order that Radia had done an admirable job as standby counsel and that Jackson consulted with Radia frequently. Finally, the court had already determined numerous times that Jackson was capable of handling the litigation *pro se*, holding that he had experience litigating, that his pleadings demonstrated a grasp of the relevant facts and law, that he had personal knowledge of the facts, and that the claims were relatively simple. The court expressed its concern with the impact of such a last-minute continuance on the prospective jurors, who had arranged to take time off from their work to appear the next day for the trial, and who could not be easily contacted. Those are relevant considerations for a court in determining whether to grant a continuance. In conclusion, there was no abuse of discretion in the court's decision to deny the continuance given that it was made on the

eve of trial in a case that had been pending for 32 months, a continuance would not result in the appointment of new counsel because the court did not believe it could reasonably obtain additional representation, Jackson had demonstrated an ability to litigate the case *pro se*, the court modified the trial schedule to allow time for Jackson to familiarize himself with the trial exhibits that had been prepared by appointed counsel, and appointed counsel would remain as standby counsel.

Jackson next challenges the court's evidentiary decision to admit a 2007 disciplinary report. The trial court enjoys broad discretion in determining whether to admit or exclude evidence, and therefore we will reverse such evidentiary determinations only for an abuse of discretion. *Hall v. Flannery*, 840 F.3d 922, 926–27 (7th Cir. 2016); *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 833 (7th Cir. 2016). At trial, Jackson testified that based on his own personal experience, he believed that he could refuse a transfer at the Logan Correctional Center. He testified that on May 16, 2007, he had arrived at Logan to be transferred to Shawnee, and he successfully refused the transfer to Shawnee. He stated that rather than being transferred, he was placed in segregation at Logan and issued a disciplinary ticket. In response to that testimony, the defendants cross-examined Jackson as to that May 2007 incident. The defendants asked Jackson whether in May 2007 he had refused a direct order to get on the bus and had then threatened to kill one of the officers at Shawnee if forced to go there. Jackson responded that he did not remember making that statement, and denied threatening the staff at Shawnee. At that point, defendants' counsel introduced the May 2007

disciplinary report to impeach Jackson, in which Jackson was found guilty of threatening correctional officers.

Jackson did not object to the introduction of that report and therefore the admission of the report can be reviewed only for plain error, which is available only in extraordinary cases. Fed. R. Evid. 103; *Boutros v. Avis Rent A Car System*, 802 F.3d 918, 924 (7th Cir. 2015). Under that standard, Jackson must show that exceptional circumstances exist, substantial rights are affected, and a miscarriage of justice will result if review is denied. *Id.* He cannot meet that burden here.

The evidence of the disciplinary report, though potentially prejudicial, was relevant to rebut Jackson's contention that he was allowed to refuse the transfer in this case because he had been allowed to do so in May 2007. The report demonstrated that additional factors were present in the May 2007 incident, in that the correctional officers believed that he had threatened to kill officers at Shawnee in the May 2007 incident, which rendered it a fundamentally different situation from the transfer at issue here. Jackson himself rendered that evidence relevant by relying on that incident, and the court did not abuse its discretion in allowing it. See e.g. *Gomez v. Ahitow*, 29 F.3d 1128, 1139 (7th Cir. 1994) (upholding the admission of threat evidence where the evidence was probative to an issue other than credibility). In fact, the court attempted to minimize the adverse impact by denying the defendants' request for a *Gilbert* instruction, which would have instructed the jury that Jackson threatened prison staff as indicated in the report despite his denial. *Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008). The court decided to admit the report rather than issue the instruction in order to minimize the likelihood that the jury

would unduly focus on that past incident. Jackson has failed to
demonstrate that his substantial rights are affected resulting in
a miscarriage of justice.

Jackson's final argument is also without merit. He asserts
that the court erred in allowing defense counsel to ask whether
he was incarcerated for a felony, to which he replied "burglary,
yes." Jackson never objected to that question, so once again
review is limited to the plain error standard, and requires a
showing that his substantial rights were violated and a
miscarriage of justice will result. *Id.* He cannot meet that
burden. Jackson had already revealed in his opening statement
that he was incarcerated for burglary, so there was no preju-
dice to him from it. That is particularly true in a case such as
this challenging actions that occur during a prison transfer,
because the fact of his incarceration is already known, so the
risk of prejudicial impact is lower. Furthermore, Jackson has
failed to indicate how introduction of that evidence could have
affected his substantial rights. See Fed. R. Civ. P. 61.

Jackson filed a *pro se* brief in this appeal, raising a number
of additional issues, but those too are without merit. He alleges
that the defendants offered conflicting testimony, but it is the
province of the jury to weigh the credibility of the witnesses
and make the final determination. *Perry v. New Hampshire*,
132 S. Ct. 716, 723 (2012). Moreover, he asserts that he should
have been allowed to present evidence as to grievances he had
pursued against Pinckneyville prison officials, but that is not
relevant to the narrow issue before the court in this case as to
the excessive force claim. He also challenges the inability to
pursue additional discovery, but concerns about discovery
were pursued in the August 26, 2014 status hearing, and the

court directed the defendants to ensure all discovery was provided by September 2nd. The court began the status hearing on September 26 by inquiring whether Radia had received all discovery and Radia responded that he had and agreed with the court that it was a "dead issue" now. Jackson did not indicate any disagreement with that statement. Accordingly, any such challenge raised in this appeal is waived. Jackson has raised no meritorious challenge in this appeal.

Accordingly, the decision of the district court is AFFIRMED.