**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2019[*]
Decided October 23, 2019

*Before*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 19-1309

| | |
|---|---|
| ROY EDWARD FORD, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> ROCKFORD BOARD OF EDUCATION, <br>     *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Western Division. <br><br> No. 14 CV 50318 <br><br> Frederick J. Kapala, <br> *Judge*. |

**O R D E R**

While working for the Rockford Board of Education, Roy Ford refused to attend a school field trip; as a result, the Board fired him for insubordination. Believing that the Board fired him because of his race (black) and past complaints about discrimination, he sued it under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e–2, 2000e–3. The district court entered summary judgment for the Board. Because no evidence suggests

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

that Ford was currently meeting the Board's legitimate expectations or that his past complaints caused his discharge, we affirm.

This suit arises from three disciplinary infractions that Ford received in his job as a Parent and Community Engagement Specialist at an elementary school. First, in early 2014, the school reprimanded Ford for failing to supervise two students who fought each other while in detention. Later that month, the school reprimanded him again for failing to report his absences properly. The third discipline came three months later, after the school required Ford to attend a field trip to the zoo and Ford refused to go. Having never been to a zoo, Ford feared that he and the students would be in danger there. On the day of the field trip, the principal told Ford that he was required to attend. Ford replied, "I'm not going." He knew that he would be disciplined for disobeying the principal. Ford's "direct" supervisor in the engagement program had warned him that he needed to "follow the chain of command" when disputes arise and that "Mr. Lerner [the principal] is your immediate supervisor as you are in his building … ." Ford refused to leave the building and attend the trip. He was suspended that same day.

Ford's discharge followed these infractions. His behavior was discussed at a meeting in July 2014 that included his "direct" supervisor, the principal, and others. After the meeting, the principal recommended that the Board fire Ford for insubordination, and the Board approved the recommendation. Ford responded to his firing with charges of discrimination and retaliation that he filed with the Equal Employment Opportunity Commission. (In the months and years before his firing, Ford had complained to the Board and administrators about his work supplies, potential race discrimination in coaching positions (he had been removed from one in 2011), and district-wide race discrimination in general.)

This suit came next, and the district court entered summary judgment for the Board. The court ruled that Ford had failed to present evidence of a prima facie case of race discrimination or that his prior complaints had caused his discharge. (Ford also had claimed that his workplace environment was racially hostile. The district court decided that he had not exhausted his administrative remedies for this claim, and because Ford does not challenge that ruling, we say nothing further about it.)

On appeal, Ford fails to cite the record. The Board argues that this failure is grounds for affirmance. *See* FED. R. APP. P. 28(a); *Boutros v. Avis Rent A Car Sys., LLC*, 802 F.3d 918, 923–24 (7th Cir. 2015). But because Ford is pro se, we liberally construe his briefing, *Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014), and decide his case on the merits. *See Boutros*, 802 F.3d at 924. In doing so, we rely on the

Board's recitation of the facts, *see id.*, construed in Ford's favor, and review the grant of summary judgment de novo. *Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009).

To survive summary judgment under the *McDonnell Douglas* burden-shifting framework, which both parties use, Ford had to furnish evidence that, among other things, he was meeting his employer's legitimate job expectations. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). We discern two arguments that Ford raises to suggest that a reasonable jury could find that he was meeting those expectations. Neither persuades us.

First, Ford argues that the principal was not his "direct" supervisor, so in disobeying that principal's order to attend the field trip, he was not insubordinate. He cites in support *Jones v. Union Pac. R. Co.*, 302 F.3d 735, 743–44 (7th Cir. 2002). In that case, an employee dismissed for insubordination argued (unsuccessfully) that he could not have been "insubordinate" in quarreling with another employee because, he said, this employee was not his supervisor. But *Jones* cuts against Ford because in that case the other employee was *a* "supervisor," even if not the plaintiff's direct supervisor. *Id.* The same is true here. Ford's "direct" supervisor warned Ford that "Mr. Lerner [the principal] is your immediate supervisor as you are in his building" and in "the chain of command." Ford does not dispute that the principal is a supervisor and that he refused the principal's directive to attend the field trip while in his building. The undisputed facts show that by disobeying a supervisor's order, Ford thus failed to meet his employer's legitimate expectations.

Second, Ford argues that the Board treated similarly insubordinate non-black workers more favorably, but he lacks evidence of this. A similarly situated coworker is one with a "comparable set of failings"—not a coworker with "differing roles, performance histories, or decision-making personnel." *Abrego v. Wilkie*, 907 F.3d 1004, 1013–14 (7th Cir. 2018) (citations omitted). Ford points to two workers: a white registrar at a different school who received only written discipline for rudely gesturing to that school's principal, and an unnamed white administrator who received no discipline for asking that he not receive certain work. But these two workers are not comparable. To begin, neither had a "comparable set of failings." The registrar was merely disrespectful and the administrator asked for different work assignments; neither one actually disobeyed an order. In addition, no evidence suggests that the roles and work settings of these two were comparable to Ford's. Unlike Ford, the registrar was a union employee entitled to progressive discipline and worked under different supervisors.

And Ford does not even name the other administrator or describe that person's job duties and supervisors.

Ford next turns to his claim that the Board fired him in retaliation for protected speech—his past complaints to the Board about discrimination against black employees. To survive summary judgment on this claim, he "must produce enough evidence for a reasonable jury to conclude that (1) [the employee] engaged in a statutorily protected activity; (2) the defendant took a materially adverse action against [him]; and (3) there existed a but-for causal connection between the two." *Abrego*, 907 F.3d at 1014 (quoting *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). We can assume that Ford's past complaints were protected speech and that his discharge was a materially adverse action. His claim turns on whether his past complaints caused his discharge. Causation can be established by "circumstantial evidence," such as "suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently." *Id.* at 1015 (quoting *Gracia v. Sigma Tron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016).

Ford has not presented evidence of causation. The record reflects that Ford emailed his past complaints several months—and, at times, even years—before his suspension. These came too far in advance of his discharge to support a reasonable inference of "suspicious timing." When we infer causation from suspicious timing, as Ford asks us to do, we usually allow "no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012). Ford also does not point to any similarly situated employees who did not complain about racial animus and whom the Board treated better. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). Finally, Ford submits no evidence showing that the Board fired him pretextually. He does not question the Board's sincerity in believing him to be insubordinate; he questions only whether the Board was *correct* to find him insubordinate. But even if the Board's decision were incorrect, an incorrect decision, however foolish, is not sufficient to show pretext. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016).

We close by noting that Ford included in his appellate appendix a past complaint to the Board that he never submitted to the district court or made part of the record. This complaint, an email to the Board titled "HOSTILE and UNSAFE WORK ENVIRONMENT," alleged generalized racial animus against staff and is dated one day before the Board suspended him for refusing to attend the field trip. We need not, however, decide whether this email is evidence of suspicious timing that supports a

claim of retaliation. We consider only evidence properly presented to the district court, where its authenticity can be tested and the court can assess its significance. *See Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 476 (7th Cir. 2010). This email was not presented to the district court, so we do not consider it now.

AFFIRMED