In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-2360

THAD F. BROCKETT,

*Plaintiff-Appellant,*

*v.*

EFFINGHAM COUNTY, ILLINOIS and
JIM NIEMANN,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:22-cv-00044-SMY — **Staci M. Yandle**, *Judge.*

———————————

ARGUED FEBRUARY 5, 2024 — DECIDED AUGUST 29, 2024

———————————

Before ROVNER, BRENNAN, and KIRSCH, *Circuit Judges.*

ROVNER, *Circuit Judge.* Thad Brockett, a sheriff's department employee, alleges he was terminated for supporting the former sheriff in disputes between the sheriff and the county chair, and for reporting misbehavior by two correctional officers under his supervision. For several decades, the Supreme Court has been fine tuning the scales that weigh a public employee's free speech rights under the First Amendment

against the government's need to efficiently and effectively provide services to its citizens. Brockett's appeal of the district court's dismissal of this case might have provided an opportunity to balance these competing interests once more. Our adversarial system, however, requires parties to present us with arguments minimally demonstrating that they are entitled to relief. Without that, we have no choice but to find that claims have been waived, as we do here.

## I.

Brockett worked in the Effingham County, Illinois Sheriff's Department from July 1996 until December 2014. In 2012, his supervisor, Sheriff John Monnet, promoted him to Operations Sergeant where he supervised and oversaw jail, telecommunications, and court security personnel. Defendant Jim Niemann took office as Chairman of the Effingham County Board in 2012. These facts are undisputed. For the remainder of the facts, for purposes of this motion to dismiss, we accept Brockett's facts as true and draw reasonable inferences in his favor. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). We note that we have gathered many of these facts directly from the complaint, as Brockett's brief failed to cite to the record as required by Federal Rule of Appellate Procedure 28(6); *see also Boutros v. Avis Rent a Car Sys., LLC*, 802 F.3d 918, 924 (7th Cir. 2015).

According to Brockett, upon taking office, Niemann attempted to interfere with, control, and manipulate the operations of the Sheriff's Department over the objections of Sheriff Monnet, and publicly accused the Sheriff of mismanaging public funds and converting public property. Niemann and other members of the County Board, the Sheriff's office, and

the public were aware that Brockett supported Sheriff Monnet in his disputes with Niemann and the Board members.

In early 2013, Sheriff Monnet terminated two Effingham County correctional officers after an investigation led by Brockett uncovered inmate safety and security procedure violations. Brockett alleges that due to the defendants' demands, the officers were later reinstated. In mid-2013, Brockett conducted another investigation of the same two correctional officers, collecting evidence that they sexually harassed female inmates to obtain or attempt to obtain sexual favors. Brockett reported his new findings, along with the original findings, to the Sheriff, the Effingham County State's Attorney, the Illinois State Police, the FBI, an Assistant United States Attorney for the Southern District of Illinois, the Office of the Illinois Appellate Prosecutor, coworkers not in the chain of command in the Sheriff's Department, and to members of the public. Nevertheless, Niemann and the Board shielded the officers from discipline and prosecution.

In early 2014, Niemann, with approval of the Board, successfully initiated proceedings with the Illinois Labor Relations Board to have Brockett removed from the union so that he could be terminated without union protection. The newly elected Sheriff, David Mahon, took office on December 1, 2014, and discharged Brockett two weeks later, claiming that the Board had deleted funding for the position of Operations Sergeant. Brockett alleged that this rationale was pretextual, and that the defendants were, in fact, retaliating against him for exercising his First Amendment rights by supporting Sheriff Monnet, and by reporting the correctional officers' unlawful acts.

Brockett sued Niemann and the County pursuant to 42 U.S.C. § 1983, alleging a claim of First Amendment retaliation. The district court determined first that Brockett's speech pertained to matters personal to Brockett and not to matters of public concern, and second, that his speech was made pursuant to his official duties and not as a private citizen. For these reasons, the court concluded that Brockett's speech was not protected by the First Amendment. Brockett appealed but has failed to provide this court with anything more than the most cursory arguments. We therefore affirm the district court's grant of the defendants' motion to dismiss, but for alternate reasons.

## II.

Public employees do not relinquish their First Amendment rights by accepting government employment. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). On the other hand, government employers, like all employers, must be able to curtail speech that interferes with the operations of the government entity in order to promote "the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). The Supreme Court's major analyses of public employee free speech began with *Pickering* and was modified by *Connick v. Myers*, 461 U.S. 138 (1983)—the two cases together forming the now-well-known balancing test which weighs a public employee's interest in freedom of speech against the government's interest in the efficient provision of services. In the *Pickering-Connick* framework, a court must first ask if the employee spoke (1) as a private citizen and (2) on a matter of public concern. *Connick*, 461 U.S. at 147; *Pickering*, 391 U.S. at 568. If the answer to either of these questions is "no," then the

employee has no First Amendment cause of action. *Garcetti*, 547 U.S. at 418. If both are true, then the court goes on to ask whether "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees" outweighs "the interests of the [employee], as a citizen, in commenting upon matters of public concern." *Pickering*, 391 U.S. at 568. In *Garcetti* the court further clarified, that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

The Supreme Court has noted, "conducting these inquiries sometimes has proved difficult." *Garcetti*, 547 U.S. at 418; *see Kingman v. Frederickson*, 40 F.4th 597, 602 (7th Cir. 2022) (noting that determining whether the Free Speech Clause protected the plaintiff's complaints about the city administrator was not "an easy task"). Yet despite these complexities, Brockett does not engage with any analysis of the First Amendment issues. For example, the substance of his argument on the first issue—whether the speech constituted a matter of public concern—consists of only four sentences. They are as follows:

> It appears that the district court failed to apply the above principle [of accepting as true all well-pleaded facts and resolving all reasonable inferences in the plaintiff's favor], and that the conclusion that a dispute between a Sheriff versus the Chairman of the County Board and the County Board over alleged conversion of public property and mismanagement of public funds

> was not a matter of public concern was fash-
> ioned from whole cloth with no basis in fact or
> law.
>
> No case cited by the district court supports the
> district court's position on this "public concern"
> issue. There are no facts alleged in the Amended
> Complaint which support the district court's
> conclusion.
>
> Moreover, political activity is protected by the
> First Amendment regardless of the employment
> status of the Plaintiff. *Heffernan v. City of Patter-
> son*. 136 S. Ct. 1412 (2016).

Brockett Br. at 9 (emphasis omitted).

Brockett does not set forth the elements of a First Amend-
ment retaliation claim. *See Deeren v. Anderson*, 72 F.4th 229, 235
(7th Cir. 2023). Nor does he assert that he meets the prerequi-
sites of *Pickering-Connick* balancing. He cites but one case on
speech as a matter of public concern, *Heffernan*, 578 U.S. at 266,
but only for the proposition that "political activity is protected
by the First Amendment." Brockett Br. at 9. Political speech is
indeed protected by the First Amendment, but not always.
The limitations on protections of that speech for public em-
ployees can only be determined by looking at the require-
ments of *Pickering, Connick, Garcetti,* and their progeny, and
thus Brockett had to provide some argument that his speech
satisfied the requirements of *Pickering* and *Connick*.

Of course, in this case we are approaching these questions
in the context of a motion to dismiss, so the requirements of
*Pickering* and *Connick* must be viewed through the lens of our
liberal, undemanding pleading standard. To survive a motion

to dismiss, a complaint must be plausible on its face, meaning that the plaintiff must have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations to meet that standard, but must go beyond mere labels and conclusions, and must "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

Although the pleading standard is liberal, it is still the case that a plaintiff challenging the dismissal of his complaint must make an argument as to why the lower court erred in finding that the complaint failed to state a claim on which relief could be granted. "Thus, even a complaint that passes muster under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint." *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019). In *Lee*, we noted that the plaintiffs spent "significant time discussing the liberalness of the federal pleading standard, arguing that too much was expected of them at the pleading stage," but they "fail[ed] to provide argument that each claim satisfied the pleading standard." *Id.* We held that the plaintiff's failure to grapple

with the legal issues that the defendants raised on appeal resulted in waiver. *Id.*[1]

Brockett's primary argument is "that no case cited by the district court supports the district court's position on this 'public concern' issue." Brockett Br. at 9. But he does not tell us *why* those cases do not support the district court's position, or, more importantly, which cases do support his argument. Likewise, he says that "[t]here are no facts alleged in the Amended Complaint which support the district court's conclusion." *Id.* This is an odd argument, as it is Brockett's duty to allege facts showing his entitlement to relief, and he fails to tell us which facts alleged in the complaint do that, and why. Brockett wholly ignores the Federal Rules of Appellate Procedure requirement that his argument contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."

---

[1] We should not confuse the requirement for a party opposing a motion to dismiss to "provide argument in support of the legal adequacy of the complaint" (*Lee*, 912 F.3d at 1053–54) with the district court's responsibilities upon reviewing such a motion. To be sure, we have held that a district court may not grant a motion to dismiss *solely* because there is no response from the non-movant. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). It is the movant's burden, after all, to demonstrate an entitlement to relief on the motion to dismiss. *Id.* The district court has an independent duty to evaluate whether the movant has met that burden. In this appeal, however, we are not evaluating whether the district court erred by granting relief solely based on the non-movant's failure to respond at all. The district court evaluated the motion to dismiss and concluded that the claim should be dismissed on the merits. Brockett has appealed that decision, telling us that the district court wrongly granted the motion to dismiss. On appeal, he now has an obligation to tell us why he believes the district court erred.

Fed. R. App. P. 28(a)(8)(A). This alone, should be grounds for dismissal. *See Boutros,* 802 F.3d at 924.

Our review on a motion to dismiss is de novo, so we must consider a plaintiff's arguments as to the sufficiency of his complaint anew. *Kubiak v. City of Chicago,* 810 F.3d 476, 480 (7th Cir. 2016). Where a plaintiff, on appeal, offers only a few cursory sentences, we cannot properly perform our review, and "[w]e will not fill this void by crafting arguments and performing the necessary legal research." *Shipley v. Chicago Bd. of Election Comm'rs,* 947 F.3d 1056, 1062–63 (7th Cir. 2020) (*quoting Fednav Int'l Ltd. v. Cont'l Ins. Co.,* 624 F.3d 834, 842 (7th Cir. 2010)). "In our adversarial system of adjudication … we rely on the parties to frame the issues" as our system "is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (cleaned up). Therefore, "[a]rguments that are underdeveloped, cursory, and lack supporting authority are waived." *Shipley*, 947 F.3d at 1063. And even arguments that have been raised in the district court may still be waived on appeal if they are underdeveloped here. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *see also Ostrowski v. Lake Cnty.*, 33 F.4th 960, 966 (7th Cir. 2022) (appellate court held claim was forfeited when appellate brief barely touched on the statutory basis for the claim even where that basis had been raised in the complaint). As the focus sharpens on appeal, an appellate court requires "more information and more comprehensive analysis than was provided for the district judge," not less. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 232 (1991).

Because Brockett's argument in his "speech as a matter of public concern" section is waived, we do not need to independently evaluate whether he also waived his argument that he was speaking as a private citizen and not pursuant to his duties. The *Pickering-Connick* test requires satisfaction of both prongs of the two-part prerequisites to balancing. *Garcetti*, 547 U.S. at 418; *Connick*, 461 U.S. at 146.

Despite our holding, we must stress that there is no magic number of words, sentences or cases that a litigant must provide to the court to defeat a motion to dismiss. We encourage concise and efficient briefing. But at the same time, if a litigant has come to the court to assert that a district court judge erred when granting a motion to dismiss, that litigant must engage in a legal argument telling us why. Our adversarial system relies on counsel to advance arguments entitling them to relief. *Sineneng-Smith*, 140 S. Ct. at 1579. The judgment of the district court is therefore AFFIRMED.